UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RAYSHAWN DEMOSTHENE,

                Petitioner,                          18-cv-5346 (PKC)
                                                            S2 16-cr-446 (PKC)

        -against-                                 OPINION AND ORDER

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioner Rayshawn Demosthene, proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 based upon the asserted ineffectiveness of his counsel at sentencing. Because the background leading up to his guilty plea and sentencing are important to understanding his claim, the Court will set out the facts in some detail.

        Demosthene was originally indicted for conspiracy to commit an interstate murder-for-hire, a death eligible crime that carried a mandatory life term. See 18 U.S.C. § 1958. Demosthene retained Anthony Ricco, Esq. as his counsel. Because the case was death eligible, another lawyer, learned in the law of capital cases, was appointed as a second counsel, Mark DeMarco, Esq. The Court also appointed an investigator and a "mitigation specialist" to gather "confidential information pertaining to the social, educational and medical background of the defendant, along with his family history." (DeMarco Ltr. of Aug. 4, 2016; Orders of Aug 11, 2016.) Ultimately the government declined to seek the death penalty (Doc 39) and Mr. DeMarco was allowed to remain on the case.

Defense counsel successfully persuaded the government to allow their client to plead to a superseding information that did not include a mandatory life count. Demosthene entered a plea of guilty before Magistrate Judge Barbara Moses to two counts of a superseding information. (Dec. 29, 2016, Tr.; Doc 40.) Count One charged him with travelling interstate and using a facility in interstate commerce to commit a crime of violence, the murder of Michael Morris, in furtherance of a drug distribution enterprise. (Doc 34.) Count Two charged that he was a felon in possession of a .38 caliber Kel-Tec Pistol. (Id.) In his plea allocution, he explained how he had joined a scheme to lure Morris from Virginia to Brooklyn for the ostensible purpose of buying drugs and the actual purpose of robbing him. (Dec. 29, 2016, Tr. 22; Doc 40.) He admitted that during the robbery attempt he fired several gunshots at the car Morris was driving and that one of those shots killed him. (Id.) On January 6, 2017, the undersigned accepted the guilty plea before the Magistrate Judge. (Doc 38.)

The plea agreement with the government contained a Stipulated Guidelines Range of 324-405 months' imprisonment with, of course, the right of defense counsel to argue to the Court for a downward variance. (Plea Agreement, Dec. 21, 2016, at 3.) The agreement also stated that "neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts." (Id. at 4.) "It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. . . . This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive." (Id.)

The Presentence Report ("PSR") found Demosthene to be at Total Offense Level 40 and Criminal History Category ("CHC") III with a resulting guideline range of imprisonment

of 360 months to life. The principal difference between the PSR and the plea agreement was that the PSR included two criminal history points for a Youthful Offender Adjudication at age eighteen for Attempted Robbery in the Second Degree for which the defendant received a ten month sentence. This adjudication together with the conviction for Robbery in the Third Degree gave him a total of four criminal history points, placing him in CHC III rather than CHC II contemplated by the plea agreement. The PSR recommended a downward variance to 276 months imprisonment.

Demosthene's lawyers made several objections to the preliminary PSR that were adopted by Probation and other objections that were noted but not adopted. Among the objections made but not adopted were that Demosthene's Youthful Offender Adjudication for Attempted Robbery in the Second Degree should not have been included in his CHC and that Robbery in the Third Degree was not a "crime of violence." The Final PSR explained Probation's basis for rejecting the objections.

Prior to sentencing, defense counsel made multiple submissions to the Court. On March 16, 2017, defense counsel made a seven-page single-space submission challenging the guideline calculation in the PSR and urging a below guidelines sentence. (Doc. 43.) Sentencing originally scheduled on April 28, 2017 was adjourned at the request of defense counsel several times. Defense counsel reported that they had met with the government in an effort to narrow the disputed issues and that they anticipated that the defendant's objections would be revised. (Ricco Decl., June 7, 2017; Doc 53.)

The final sentencing memorandum submitted on behalf of Demosthene spanned 30 pages and argued for a below Guidelines sentence "upon four primary grounds: (1) a sentence under the guidelines fails to account for the dysfunctional background and extraordinary lack of

3

guidance Rayshawn Demosthene's [sic] endured during his youth, which served to derail his life; (2) Rayshawn Demosthene's exceptional post arrest and overall institutional rehabilitation, along with the imposition of a substantial but non-guidelines sentence, reflect a diminishing likelihood of recidivism in this case; (3) the mitigating circumstances present in the commission of the offense; and (4) the destructive impact that the guideline sentence in this case would have on innocent third parties (Rayshawn Demosthene's fiancé and sons)." (Doc 58 at 2.) The memorandum spoke about his difficult upbringing, the "high level of domestic violence and physical abuse" in the household, and "parental abandonment." (Id. at 6, 11, 16.) It also pointed out that, under today's standards, a young boy like the defendant would have been removed from the "toxic" family environment by the Administration for Children's Services. (Id. at 15.)

Demosthene's mental health was also addressed in defendant's submission.[1] Defense counsel explained that at the age of ten, Demosthene received therapy twice a week and was placed on Depakote, a medication prescribed for bipolar disorder. (Id. at 16.) The defendant's submission reported that Demosthene "was unable to emotionally reconcile the violence and abuse he witnessed and endured at home throughout his formative years" and was "often depressed." (Id. at 18.)

With regard to the guideline calculation, defense counsel reported in their sentencing memorandum that, although they had previously objected to some of the facts setting forth the offense conduct, the characterization of prior convictions, and the methodology

---

[1] While defense counsel did not neglect to highlight the defendant's mental health issues in the sentencing submission, at the plea allocution the defendant was asked and answered as follows:
    THE COURT: Are you now or have you recently been
    under the care of a doctor or a psychiatrist or a psychologist
    for any reason?
    THE DEFENDANT: No.
    THE COURT: Nothing you can think of?
    THE DEFENDANT: No.
(Dec. 29, 2016, Tr. 7; Doc 40.)

4

employed to calculate criminal history points, all objections except one were "hereby withdrawn." (Id. at 8.) The one remaining material objection was to "the overall fairness of imposing a guideline sentence which is based upon a regime which fails to account for, or give an [sic] numerical value to Rayshawn's [sic] Demosthene's individualized background and history." (Id.)

At sentencing, the Court inquired whether there were any objections to the facts set forth in the PSR and defense counsel reported that there were not. (June 20, 2017, Tr. 3.) Defense counsel also reported that there were no objections to the guideline calculation in the PSR and that it was consistent with the plea agreement. (Id. at 3-4.) The Court adopted the guideline calculation in the PSR. (Id. at 4-5.)

Mr. Ricco spoke eloquently at Demosthene's sentencing. The defendant delivered a thoughtful statement of his own. The Court noted as follows: "I think the defense's memorandum submitted in this case is one of the finest that I've ever read as a sentencing judge. Enormous thought and work went into it and it's an excellent job of portraying the defendant." (Id. at 17.) In its statement of reasons, the Court focused on Demosthene's difficult childhood, his placement on the medication Depakote at around the age of ten because of "the seriousness of the condition," and his drug use. (Id. at 17-21.)

After announcing the proposed sentence, the Court inquired whether there were any objections from the defendant or his counsel to the proposed sentence and there were none. (Id. at 21.) The Court sentenced Demosthene principally to a term of imprisonment of 244 months on Count One and 120 months on Court Two, to run concurrently, a sentence that was 116 months below the low end of the advisory Guidelines and 80 months below the Stipulated Guidelines Range in the plea agreement. (Id. at 22-25.) No appeal was filed from the Judgment.

Section 2255 and Ineffective Assistance of Counsel

In his pro se motion, Demosthene challenges the sentencing proceedings. He asserts that he was denied the effective assistance of counsel in violation of the Sixth Amendment, Strickland v. Washington, 466 U.S. 668 (1984), because his lawyer failed to conduct a reasonable investigation into his background, failed to present mitigating evidence concerning his mental health, failed to object to the inclusion of a Youthful Offender Adjudication in his sentencing proceeding, and failed to object to the characterization of Robbery in the Third Degree as a crime of violence.

To prevail on a section 2255 motion, the petitioner must show "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted). A petition may warrant a hearing if the petition contains factual assertions that can be proved by competent evidence, and a court concludes that the petitioner could make out a prima facie case for relief at that hearing. Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." United States v. Aiello, 814 F.2d 109, 113–14 (2d Cir. 1987).

On his claim of in effective assistance of counsel, Demosthene "must demonstrate that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing Strickland, 466 U.S. at 687–88). A petitioner "bears a 'heavy' burden" to establish

6

that an attorney's performance "was unreasonable under 'prevailing professional norms.'" Id. (quoting Harrington v. United States, 689 F.3d 124, 129–30 (2d Cir. 2012)).

Application of Strickland to the Facts

On the first prong of Strickland, Demosthene's counsel's performance was exemplary and did not fall below an objective standard of reasonableness. There was no basis for challenging the inclusion of two criminal history points for the Youthful Offender Adjudication that resulted in a sentence of ten months because it was properly included. See United States v. Matthews, 205 F.3d 544, 546 (2d Cir. 2000) (Sotomayor, J.); U.S.S.G § 4A1.1(b) (advising the addition of two points for each prior sentence of at least sixty days but less than a year and a month). The designation of Robbery in the Third Degree under New York law as a "crime of violence" within the meaning of U.S.S.G. § 2K2.1(a)(4)(A) had no impact on the Guidelines calculation in the PSR. The designation of the crime as a "crime of violence" increased the base offense level for Count Two to 20 but the Multiple Count Adjustment resulted in the use of the Adjusted Offense Level for Count One, 43, as the basis for calculating the Total Offense Level of 40. (U.S.S.G. § 3D1.4(c); PSR ¶¶ 37-44.) In other words, whether Robbery in the Third Degree was or was not a "crime of violence" had no impact whatsoever on the Guidelines calculation.[2] The robbery conviction received two criminal history points as it should have under U.S.S.G § 4A1.1(b).

It was perfectly reasonable for experienced defense counsel not to waste a minute of time arguing an immaterial point under the guidelines that could not affect the guideline

---

[2] It is not necessary to reach the government's argument that the conviction was properly considered a "crime of violence." (Ltr. in Opp., Aug. 23, 2018, at 6 n.1; Doc 73.) It is also unnecessary to reach Demosthene's argument that the inclusion of a reference in the PSR to a "crime of violence" may affect his eligibility for BOP programs. The claim is of dubious merit given his unchallenged conviction for Travel Act Murder; in any event, his eligibility for BOP programs is not within this Court's jurisdiction.

7

calculation. Moreover, defense counsel's central point was that the Court should not impose a guideline sentence because of other factors under 18 U.S.C. § 3553(a).

Defense counsel vigorously and effectively argued a host of mitigating circumstances relating to the history and characteristics of this defendant. The final sentencing memorandum is a model of effective advocacy. It specifically highlighted the defendant's mental health problems. (Doc 58 at 16.)

Because the sentencing advocacy of defense counsel was substantially above the objective measure of reasonableness and there were no professional errors, nothing that defense counsel did or failed to do prejudiced defendant to the slightest. He greatly benefitted from effective representation by his two lawyers.

<u>The Waiver of the Right to Attack a Sentence in the Plea Agreement</u>

The Court notes that in the plea agreement the defendant waived his right to appeal or collaterally attack a sentence within or below the Stipulated Guidelines Range. (Plea Agreement, Dec. 21, 2016, at 4.) At his plea allocution, Demosthene expressed his understanding of the waiver. (Dec. 29, 2016, Tr. 18; Doc 40.) The sentence imposed was well below the Stipulated Guidelines Range in the plea agreement and thus the waiver appears to bar Demosthene's motion. But, because the government has not argued the waiver point, the Court declines to base its decision on the apparent waiver.

CONCLUSION

Demosthene's petition for relief pursuant to section 2255 is DENIED. The Clerk is directed to close the case (18 cv 5346) and to terminate the related motion in the criminal case (16 cr 446, Doc 70).

Demosthene has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 13, 2018